UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

IN RE:

Hosner Holdings, Inc.

                Debtor.

_____/

Chapter 11
Case #18-55404
Hon. Thomas J. Tucker

## DEBTOR'S 1st AMENDED ~~DEBTOR'S~~ COMBINED PLAN AND DISCLOSURE STATEMENT

Formatted: Superscript

### I.  PLAN OF REORGANIZATION

### INTRODUCTION

Hosner Holdings, Inc. (the "Debtor"), a Michigan Corporation, proposes the following Plan of Reorganization (the "Plan") to resolve outstanding Creditor Claims and Interests (each as defined below).   Combined with this Plan is the Disclosure Statement (as defined below), which includes a discussion of the Debtor's history, business, property, operations, and a summary analysis of the Plan.  The Debtor is the proponent of this Plan within the meaning of Section 1129 of the Bankruptcy Code.

### ARTICLE I
### DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

1

1.1 **SCOPE OF DEFINITIONS: RULES OF CONSTRUCTION**. For purposes of the Plan, except as expressly provided, all capitalized terms not otherwise assigned shall have the meaning ascribed to them in this Article I of the Plan. Any term not used in the Plan that is not defined in this Article I of the Plan, but is defined in the Bankruptcy Code, the Bankruptcy Rules (as defined below) or the Disclosure Statement shall have the meaning ascribed to such terms in the Bankruptcy Code, the Bankruptcy Rules, or the Disclosure Statement, as the case shall be. Whenever the context requires, such terms shall include the plural as well as the singular, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

1.2 Definitions.

1.2.1 **Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or 507(b) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(2) or 507 (b) of the Bankruptcy Code, including, but not limited to: (a) the actual necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the Petition Date, (b) Professional Fees, (c) all fees and charges assessed against the Estate under 28 USC § 1930, and (d) all Allowed Claims that are entitled to be treated as administrative claims pursuant to a Final Order under Section 546 (c)(2) of the Bankruptcy Code.

1.2.2 **Administrative Creditor**" means any Creditor holding an Allowed Administrative Claim.

2

1.2.3 **"Allowed"** means, when used in reference to a Claim or Interest, within a particular Class, an Allowed Claim or Allowed Interest of the type described in such Class.

1.2.4 **"<u>Allowed Claim</u>"** means:

    A.  A Proof of Claim or Interest that was:

       1.  Timely filed;

       2.  Deemed filed pursuant to Section 1111(a) of the Bankruptcy Code; or

       3.  Filed late with leave of the Bankruptcy Court after notice and an opportunity for hearing given to Debtor and counsel for Debtor; <u>and</u>

    B.  The claim:

       1.  Is not a Contested Claim or a Contested Interest; or

       2.  Is allowed (and only to the extent allowed) by a Final Order of the Bankruptcy Court.

1.2.5 **"<u>Avoidance Actions</u>"** means all claims granted to the Debtor-in-Possession or to the Estate under Chapter 5 of the Bankruptcy Code.

1.2.6 **"<u>Ballot</u>"** means the official Bankruptcy Form No. 14 or a document prepared to substantially conform to same that was distributed to all Creditors and parties-in-interest in connection with the solicitation of votes for or against the Plan.

1.2.7 **"<u>Bankruptcy Code</u>"** means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code (11 USC §§ 101, et seq.), as in effect as of the Petition Date, or thereafter amended to the extent that such amendments are applicable to the Chapter 11 Case.

3

1.2.8 **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, or such other court as may have jurisdiction over the Chapter 11 Case.

1.2.9 **"Bankruptcy Rules"** or **"Rules"** means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court that became effective on August 1, 1991, and any amendments thereto, and the Federal Rules of Civil Procedure, as amended, and as made applicable to the Chapter 11 Case or proceedings therein. To the extent applicable, Bankruptcy rules also refers to the Local Rules of the U.S. District Court for the Eastern District of Michigan, as amended and as applicable to the Chapter 11 Case, and the Local Bankruptcy Rules for the Eastern District of Michigan, as amended.

1.2.10 **"Bar Date(s)"** means the date(s), if any, designated by the Bankruptcy Court as the last date(s) for filing Proofs of Claims or Interests against the Debtor, or otherwise asserting any claim against the Debtor, or, in the absence of such designation, as shall be applicable under the Bankruptcy Rules.

1.2.11 **"Business Day"** means any day other than a Saturday, Sunday, or "Legal Holiday," as that term is defined in Bankruptcy Rule 9006(a).

1.2.12 **"Cash"** means legal tender of the United States or equivalence thereof.

4

1.2.13 **"Chapter 11 Case"** means the case currently pending before the bankruptcy Court styled *In re Hosner Holdings, Inc..*, Case No. 18-55404.

1.2.14 **"Claim"** means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.2.15 **"Class"** means a category of Holders of Claims or Interests as described in Article III of this Plan.

1.2.16 **"Confirmation Date"** means the date on which the Bankruptcy Court shall enter the Confirmation Order.

1.2.17 **"Confirmation Hearing"** means the first day of the hearing to consider the confirmation of the Plan under Section 1128 of the Bankruptcy Code.

1.2.18 **"Confirmation Order"** means a Final Order entered by the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

1.2.19 **"Contested"** means, when used in reference to a Claim or Interest in this Plan, any Claim or Interest as to which Debtor or any other party-in-interest has interposed an objection or commenced an adversary proceeding in accordance with the

5

Bankruptcy Code, Bankruptcy Rules, and this Plan, which objection has not been determined by a Final Order.

      1.2.20 **"Creditor"** means any Holder of a Claim against the Debtor.

      1.2.21 **"Disclosure Statement"** means the written disclosure Statement that relates to the Plan, attached hereto, as amended, supplemented or modified from time to time, and that was prepared and distributed in accordance with Section 1125 of the Bankruptcy Code and applicable Bankruptcy Rules.

      1.2.22 **"Effective Date"** means the tenth (10) Business Day after the Confirmation Order becomes a Final Order.

      1.2.23 **"Estate"** means the Estate of the Debtor in this Chapter 11 Case, or created pursuant to Section 541 of the Bankruptcy Code.

      1.2.24 **"Final Order"** means an order of the Bankruptcy Court as to which (i) the time for appeal has expired and no appeal has been timely taken, (ii) any timely appeal has been finally determined or dismissed and the time for any successive appeal has expired and no successive appeal has been timely taken or, (iii) in the discretion of the Reorganized Debtor, an appeal has been timely taken but such order has not been stayed within ten (10) days after the filing of such appeal.

      1.2.25 **"GAAP"** means generally accepted accounting principles.

6

1.2.26 **"Group"** means Creditors who hold Claims in this Estate which are (i) not subject to being placed in a Class pursuant to Section 1123(a)(1) of the Bankruptcy Code, and (11) not entitled under Section 1126 of the Bankruptcy Code to vote to accept or reject the Plan.

1.2.27 **"Holder"** means a Person holding a Claim, Interest, or Lien, as applicable.

1.2.28 **"Impaired"** means, when used with reference to a Claim or Interest, that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.2.29 **"Insider"** shall have the meaning ascribed to such term in Section 101(31) of the Bankruptcy Code.

1.2.30 **"Interest"** means any equity interests in the Debtor, of any kind or nature, including without limitation, any corporate share interests.

1.2.31 **"Lien"** means a charge against, or an interest in property to secure payment of a debt or performance of an obligation.

1.2.32 **"Person"** shall have the meaning given to it under Section 101(41) of the Bankruptcy Code.

1.2.33 **"Petition Date"** means November 14, 2018 the date upon which the Debtor voluntarily filed for relief pursuant to Chapter 11 of the Bankruptcy Code.

7

1.2.34 **<u>Plan</u>** means this Plan of Reorganization, as it may be altered, amended, supplemented, or modified from time to time.

1.2.35 **<u>Priority Claim</u>** means a Claim under or entitled to priority under any of the following sections of the Bankruptcy Code: §§ 507(a)(1), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), 507(a)(7), and 507(a)(8) of the Bankruptcy Code.

1.2.36 **<u>Priority Creditor</u>** means any Creditor holding a Priority Claim or Priority Tax Claim.

1.2.37 **<u>Priority Tax Claim</u>** means a Claim under or entitled to priority under Section 507(a)(8) of the Bankruptcy Code and any Secured Claim which would otherwise meet the description of an Unsecured Claim of a governmental unit under Section 507(a)(8) but for the secured status of that Claim.

1.2.38 **<u>Professional</u>** means any professional employed in the Chapter 11 Case pursuant to Sections 327 or 1103 of the Bankruptcy Code and seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.2.39 **<u>Professional Fees</u>** means the fees and reimbursement for disbursements and expenses owed to Professionals.

1.2.40 **<u>Proof of Claim</u>** means a Claim that was scheduled by the Debtor on its schedules as a Claim that was not disputed, not contingent, and liquidated, or a Claim filed by a Holder of a Claim before the Bar Date.

8

1.2.41 **"<u>Pro Rata</u>"** means at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including disputed or Contested Claims) in such Class unless the Plan expressly provides otherwise.

1.2.42 **"<u>Reorganized Debtor</u>"** means the Debtor, upon the occurrence of the Effective Date.

1.2.43 **"<u>Schedules</u>"** means the schedules of assets and liabilities, the list of holders of Interests, and the statement of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1017 as such schedules and statements have been, or may be supplemented or amended through the Confirmation Date.

1.2.44 **"<u>Secured Claim</u>"** means a Claim secured by a Lien on property in which the Estate has an interest but only to the extent of the value of the Creditor's interest in the Estate's interest in the property as of the Petition Date and only if such Secured Claim is Allowed.

1.2.45 **"<u>Unsecured Claim</u>"** means a Claim that is not a Secured Claim and is not an Administrative Claim, a Priority claim, nor a Priority Tax Claim.

1.2.46 **"<u>Voting Deadline</u>"** means the date set by the Bankruptcy Court for the submission of Ballots as set forth in the Order of the Bankruptcy Court granting preliminary approval to the Disclosure Statement.

9

1.3    **RULES OF INTERPRETATION**.  For purposes of the Plan:

1.3.1    Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially on such terms and conditions.

1.3.2    Any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented.  Except as otherwise ordered by the Bankruptcy Court, all exhibits, as amended, modified or supplemented, shall be incorporated by reference into this Plan for all purposes.

1.3.3    The words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan unless expressly stated otherwise.

1.3.4    Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or affect the interpretation of the Plan.

1.3.5    The rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.3.6    The Disclosure Statement may be used as an aid for interpretation of this Plan to the extent that any provision of this Plan is determined to be vague or

ambiguous. However, to the extent any statement in the Disclosure Statement conflicts with any provision of this Plan, this Plan controls.

1.4 **COMPUTATION OF TIME.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall govern.

1.5 **GOVERNING LAW.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Michigan shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

1.6 **EXHIBITS**. All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein; and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from the Debtor's counsel. **All Exhibits may be revised prior to the Confirmation Date by the filing of the revised Exhibits with the Bankruptcy court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan.** The Exhibits are an integral part of the Plan, and entry of the confirmation Order by the Bankruptcy Court shall constitute an approval of the Exhibits.

## ARTICLE II
## TREATMENT OF CLAIMANTS NOT SUBJECT TO CLASSIFICATION
## OR OTHERWISE NOT REQUIRED TO VOTE FOR OR AGAINST THE PLAN

11

Administrative creditors and priority creditors shall be paid as follows:

      2.1    **Group 1 – Administrative Claims.**  The claims of Group 1 shall consist of all allowed administrative claims, including any taxes that qualify as administrative claims.  <span style="color:red">This Article does not apply to the U.S. Trustee.</span>

      2.1.1 Claims included in this group shall retain their priority notwithstanding the confirmation of this plan, including, but not limited to: (i) the occurrence of the Effective Date; (ii) the filing by the Reorganized Debtor of any subsequent proceeding under any chapter of the Bankruptcy Code. The Reorganized Debtor shall remain responsible for every Claim in this group.

      2.1.2 After payment in full of all claims entitled to higher priority in accordance with § 507 of the Bankruptcy Code, each claimant in this Group shall be paid the full amount of its Claim on such date as may be mutually agreed upon between Debtor or the Reorganized Debtor and the particular claimant, or, if no such date is agreed upon, the latest of (i) the Effective Date, (ii) the date by which payment would be due in the ordinary course of business between the Debtor and such Administrative Creditor, or (iii) the date upon which the Bankruptcy Court enters its Final Order, if necessary, allowing and approving the Debtor's payment of such Administrative Claim.

      2.1.3 The Bar Date for asserting any Administrative Claim, except for any Administrative Claim for Professional Fees against the Reorganized Debtor shall be twenty (20) days after the Effective Date. Except as otherwise provided by order of the

Bankruptcy Court, any Administrative Claim except for any Administrative Claim for Professional Fees first asserted after this Bar Date will not be Allowed and shall not be entitled to payment as an Administrative Claim.

      2.1.4  Group 1 consists, without limitation, of Holders of Administrative Claims, if and when allowed.  Holders of Administrative Claims may include, without limitation,; MAXWELL DUNN, PLC for professional fees in the estimated amount of $25,000.00; Belger & Associates, P.C., for professional fees in the estimated amount of $20,000.00.  MELISSA WALTON for commissions in the estimated amount of $1,830.00; and MAZIN BAHRY for commissions in the estimated amount of $15,000.00.

    2.2    **Group 2 – Priority Tax Claims.**  The Claims of Group 2 shall consist of the Allowed Claims that are entitled to priority under § 507(a)(8) of the Bankruptcy Code.

      2.2.1  After payment in full of all Claims entitled to higher priority in accordance with § 507 of the Bankruptcy Code, the Claimants of this Group shall receive on account of such Priority Tax Claim monthly cash payments equal in the aggregate, to the amount of each Allowed Priority Tax Claim, plus interest calculated at the applicable statutory rate, or, if no statutory rate applies, at a rate of 0%.  The first quarterly payment shall be made on the first Business Day of the first calendar month after the Effective Date and quarterly monthly thereafter.  The final payment shall be due on or before sixty months after the Petition Date.  The Allowed Claims of this group may be paid in full at any time prior to the fifth anniversary of the Petition Date, but only after payment of all outstanding Professional Fees.  The Allowed Claims of this group shall be paid in full before any distribution is made to any other claimant with an

13

Administrative Claim or an unsecured claim, in the event that payment on such claims are made in full prior to sixty months following the Petition Date.

2.2.2 Group 2 consists, without limitation, of Holders of Priority Tax Claims, if and when Allowed. Holders of Priority Tax Claims may include, without limitation, the following: The Internal Revenue Service in the amount of approximately $100,000.00 and the Michigan Department of Treasury in the amount of approximately $25,000.00.

2.2.3 The Internal Revenue Service shall receive monthly payments in the amount of $1,851.00. The Michigan Department of Treasury shall receive monthly payments in the amount of $463.00.

2.2.43 Upon the failure of the Debtor or Reorganized Debtor, as applicable, to make any payments due on a Priority Tax Claim, when Allowed, that is not cured on or within thirty (30) days of the mailing of a written notice of default by the affected Priority Tax Claim Creditor, such Creditor may exercise all rights and remedies available under non-bankruptcy law for the collection of its entire claim and/or seek appropriate relief in this court.

2.2.54 To the extent practicable, in the event of a conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, all property of the Debtor, Debtor-In-Possession, or Reorganized Debtor, including all property which will re-vest in the Reorganized Debtor pursuant to Confirmation of the Plan, and all property acquired by the Reorganized Debtor subsequent to the Plan Confirmation shall be property of the Chapter 7 estate.

14

2.2.65 Notwithstanding any provision in the Plan to the contrary, nothing shall (i) affect the ability of a Priority Tax Claim Creditor to pursue to the extent allowed by non-bankruptcy law any non-debtor for any liabilities that may be related to any tax liabilities owed by the Debtor to such Priority Tax Claim Creditor; and (ii) affect the rights to assert setoff or recoupment, and such rights are expressly preserved.

2.3 **Determination of Priority Tax Claims.** The Debtor or Reorganized Debtor shall have the right to challenge any Priority Tax Claim through the Claims Objection Process set forth in Article XI of this Plan, which challenge may include, but need not be limited to, a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes, and the computation of the tax. The right to challenge these Claims shall include, without limitation, an objection to the assessment of the Debtor's real or personal property that may or may not have been made by the respective taxing authority.

### ARTICLE III
### TREATMENT OF CLASSES OF CLAIMS OR INTERESTS
### NOT IMPAIRED UNDER THE PLAN,
### AND THOSE IMPAIRED UNDER THE PLAN

The Plan divides claims and interests into the following classes and treats them as follows:

3.1 **Class One.** Class One shall consist of the Allowed Secured Claims of EBF Partners, LLC T The only claim filed in this Class was the claim of EBF Partners (Claim #4) in the amount of $68,276.15. Each of the MCA CreditorsEBF Partners claims to hold

15

a secured interest in a portion of the debtor's future business under the terms of ~~substantially similar~~a merchant cash advance agreement~~s~~. ~~Additionally, each creditor~~EBF Partners ~~in this class~~ has claimed a security interest in all ~~other~~ tangible and intangible assets of the debtor and has filed a UCC-1 to perfect its interest in the assets of the Debtor. The total aggregate value of the debtor's tangible and intangible assets ~~as of the Petition Date was $65,620.00~~is $45,679.00. As a result, the EBF Partners claim is only partially secured pursuant to 11 USC § 506(a)(1). Notwithstanding anything contained in this paragraph, the Debtor reserves all rights to object to the EBF Partners claim under this Plan, or as provided by the Bankruptcy Code.

      3.1.1 EBF Partners shall receive, pro-rata, monthly payments on account of their Allowed Secured Claim of $~~911.38~~635.00 for a term equal to the number of months beginning with the first month after the Effective Date and the month which is ~~seventy-two~~ (72) months after the Effective Date. The balance of the claims of the EBF Partners claim shall be treated as Class Four General Unsecured Claim.

      3.1.2 In the alternative, Debtor may pay EBF Partners ~~the Class 1 MCA Creditors~~ a lump sum of $10,000.00 on the Effective Date in full satisfaction of the allowed secured claims of this class.

      3.1.~~3~~2 **This class is impaired.**

    3.2 **Class Two.** Class Two consists of the allowed secured claim of ReMax of Southeast Michigan, Inc., ("ReMax"). The ReMax claim is secured by the franchise license of the Debtor. Without the use of such license, the Debtor would be unable to successfully reorganize. The value of the ReMax Franchise is approximately $25,000.00 based on the purchase price of a new franchise. The total ReMax claim amount as of the petition date was $78,127.29. The ReMax claim is therefore only partially secured

16

pursuant to 11 USC § 506(a)(1).    Notwithstanding anything contained in this paragraph, the Debtor reserves all its rights to object to the ReMax claim under this Plan, or as provided by the Bankruptcy Code and subject to any restrictions set forth in any order entered by this Court.

       3.2.1 ReMax shall receive monthly payments on account of their Allowed Secured Claim in the amount of $3,759.00 for a period of twenty-two (22) months or until such time that the claim is paid in full.  The Debtor shall also remain in compliance with all other terms of the franchise agreement and remain current in all post-petition franchise fee obligations.

       3.2.2 **This class is impaired.**

**3.3**  **Class Three.**  Class Three consists of the claims of Ace Funding,LLC, Green Capital Funding, LLC, ML Factors Funding, LLC, and YES Funding (collectively the "MCA Creditors")  The MCA Creditors hold Allowed Claims in the aggregate amount of $112,000.  The MCA Creditors are purportedly secured by all of the Debtor's assets;  however, the net aggregate value of the debtor's tangible and intangible assets as of the Petition Date less higher priority secured claims is was $0.00.  As a result, the MCA Claims are wholly unsecured pursuant to 11 USC § 506(a)(1).

       3.3.1 Each holder of an Allowed Claim in this class shall receive a pro rata distribution from the proceeds paid in by the Debtor to fund this Plan, but only after payment in full of all claims in any senior class or group.  The holders of unsecured claims shall be paid the allowed amount of their respective claims on such pro rata basis for the duration of the Plan.

17

3.3.2   Debtor estimates that creditors holding allowed claims in this Class shall receive a distribution of $0.00 on account of their claims.

3.3.3   **This class is impaired.**

**3.4**   **Class Four.**   Class Four consists of the claims of all unsecured creditors, if and when Allowed.  Debtor estimates that the total amount of claims in Class Four is $364,000.00.   Notwithstanding anything contained in this paragraph, the Debtor reserves all its rights to object to the claims of unsecured creditors under this Plan, or as provided by the Bankruptcy Code.

3.4.1   Each holder of an Allowed Claim in this class shall receive a pro rata distribution from the proceeds paid in by the Debtor to fund this Plan, but only after payment in full of all claims in any senior class or group.  The holders of unsecured claims shall be paid the allowed amount of their respective claims on such pro rata basis for the duration of the Plan.

3.4.2   Debtor estimates that creditors holding allowed claims in this Class shall receive a distribution of $0.00 on account of their claims.

3.4.3   **This class is impaired.**

3.5   **Class Five.**   Class ~~Four~~ Five consists of the claim of Richard Hosner, an insider that does not hold an equity interest in the Debtor.

3.5.1   Each holder of an Allowed Claim in this class shall receive a pro rata distribution from the proceeds paid in by the Debtor to fund this Plan, but only

18

after payment in full of all claims in any senior class or group.  The holders of ~~unsecured~~ allowed claims in this class shall be paid the allowed amount of their respective claims on such pro rata basis for the duration of the Plan.

       3.5.2   Debtor estimates that the holders of Allowed Claims in this class shall receive a distribution of $0.00 on account of their claims.

       3.5.3   **This class is impaired.**

**3.6**    **Class Six.**  Class Six consists of the claims of all equity interest holders. Equity interests are held solely by Kimberly Hosner.

       3.6.1   Kimberly Hosner was owed $158,000.00 in earned but unpaid commissions by Debtor on the Filing Date.  Each holder of an Allowed Claim in this class shall receive a pro rata distribution from the proceeds paid in by the Debtor to fund this Plan, but only after payment in full of all claims in any senior class or group. The holders of allowed claims in this class shall be paid the allowed amount of their respective claims on such pro rata basis for the duration of the Plan.

~~holds 100% of the stock of the Debtor.  Debtor stock currently has a nominal cash value.  Ms. Hosner shall contribute new value in exchange for 100% of the outstanding stock interests in the Debtor. Such new value shall be provided in the form of payment of $10,000.00 or by forgiving outstanding indebtedness of Debtor to the equity interest holder in an amount equal to the new value required under the Plan.~~

       3.6.2   Debtor estimates that the holders of Allowed Claims in this class shall receive a distribution of $0.00 on account of their claims.

~~Kimberly Hosner shall, as of the Effective Date, pay in to Debtor the new value and shall receive stock in the reorganized Debtor in exchange. Kimberly Hosner shall~~

receive the same amount and number of shares as he held prior to the Debtor filing this bankruptcy case. On the Confirmation Date, the equity interest holder shall make known to Debtor his election of the method by which he shall provide new value to Debtor, whether in the form of a cash contribution or forgiveness of debt. In either such case, no equity interest holder shall be entitled to receive any distribution on its claim until such time that all higher priority claims have been paid in full.

3.6.3 **This class is impaired.**

## ARTICLE IV
## EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1 **Continued Corporate Existence.** Except as otherwise provided in the Plan, and subject to the restructuring transactions, the Debtor shall, as a Reorganized Debtor, continue to exist after the Effective Date as a legal entity with all the powers of a corporation under the laws of the State of Michigan without any prejudice to any right to alter or terminate such existence under applicable state law. Debtor believes that future operations will generate sufficient funds to satisfy its obligations under the Plan. Additional funding may be sought from third parties pursuant to Section 4.2 below, to the extent deemed necessary and solely at the discretion of the Reorganized Debtor.

**4.2 Equity Contribution.** Ms. Hosner holds 100% of the Interests of the Debtor. Such Interests are held in the form of membership shares. Debtor Interests currently are believed to have a nominal cash value given the lack of marketability of the stock and inability to transfer her broker's license. The available market for the purchase of the franchise agreement and franchise location is limited to those potential purchasers that receive pre-approval from Creditor Re-Max of Southeast Michigan to

20

operate the franchise. On the Effective Date, Ms. Hosner shall pay $10,000 to the Reorganized Debtor and shall retain 100% of the Interests in the Reorganized Debtor (the "New Value Contribution").

4.3 **Auction.** Debtor will conduct an auction of the Interests of Debtor at 10:00 a.m. on the day prior to the confirmation hearing scheduled by the Court, which may be adjourned by the Court or Debtor. The auction of the Interests shall occur at the offices of Maxwell Dunn, PLC, 242725 W. 12 Mile Road, Suite 306, Southfield, MI 48034. The following terms and conditions shall apply to Debtor's consideration of any offer to be made at the auction:

1. Any Creditor in this Case or other party, including any Interest holder of Debtor, who wishes to make a cash offer for all of the Interests of Debtor, shall notify the Debtor's counsel in writing of its intent to make an offer no later than two (2) Business Days prior to the date of the auction. All correspondence must be mailed to Debtor's Counsel, Ethan D. Dunn, at 24725 W. 12 Mile Road, Suite 306, Southfield, Michigan 48034. At the time of giving such notice, the party or parties, shall tender a bank check in the amount of $10,000, which amount shall be held by Debtor's counsel in escrow as a deposit to be applied to the payment of the amounts due under the New Value Contribution. If Debtor's counsel does not receive any written intent to offer along with the $10,000 deposit at least two Business Days prior to the date of the auction, the auction of the Interests of Debtor shall be cancelled and the Debtor's Interest holders as of the Petition Date shall retain their Interests.

2. Any deposit shall be immediately refunded to any party, including any Interest holder, that is not the successful bidder at the auction. Any

21

failure to give the required written notice or deposit shall preclude bidding at the auction.

3.      Debtor shall give notice of the auction of Interests via publication in the Daily Distressed Asset Central (www.dailydac.com) and www.inforuptcy.com. The classified ad copy shall state:

Classified ad copy shall state as follows:

Bankruptcy auction of membership interests of residential real estate brokerage subject to terms and conditions of confirmed Chapter 11 Plan. Min. bid $10,000 subsequent bid increments of $10,000. Written notice of intent to bid and $10,000 deposit due at least 2 days prior to auction date as set forth in most recently filed chapter 11 plan of reorganization. Interested bidders shall submit notice of intent to bid and $10,000 deposit to Ethan Dunn, 24725 W. 12 Mile, Ste 306, Southfield, MI. Auction to be held with all present and qualified bidders on at 10am (EST) two days prior to the scheduled confirmation hearing. Winning bidder must pay full purchase price and execute all required agreements before the Confirmation Date.

4.      The cash required of the winning bidder to purchase the Interests must be paid in full on or before the Confirmation Date. Additionally, the successful bidder must acknowledge that Debtor and Reorganized Debtor shall be bound by all of the obligations and payment terms set forth in the Plan.

5.      Debtor reserves the right, in its reasonable business judgment, to set such other terms and conditions on bidding at the auction provided that such terms and conditions are provided to each bidder prior to commencement of the auction.

22

6.      All bids must be cash bids in U.S. legal tender.  No credit bids shall be permitted.  The initial bid shall be $10,000 and all subsequent bids shall be in $10,000 increments.

7.      At the concusion of the bidding, if any, Debtor shall announce the successful bid and the successful bidder shall execute an agreement acknowledging that the Debtor shall be bound by all obligations and payments set forth in the Plan.  Any failure to execute the agreement shall constitute a waiver of the bid and the next highest bidder shall be deemed the successful bidder.

4.42    **Financing and Restructuring Transactions**:    The funds from the contribution made by Kimberly Hosner in conjunction with the cash flow provided by Debtor's continuing business operations shall be used to fund this Plan and are reasonably expected to be sufficient.  To the extent that the Reorganized Debtor requires financing from a lending institution or from another source in order to satisfy the necessary cash payments described in the Plan, the Reorganized Debtor, it its sole discretion, may seek such financing.  In the event the Reorganized Debtor obtains such financing, it will not obligate the Debtor to acceleration of any payments or obligations set forth in the Plan.

4.53    **Avoidance Actions.**  Potential Avoidance Actions consist of claims are described in the Disclosure Statement and are incorporated herein by reference against each of the MCA Creditors in Class 3 for preferential an constructively fraudulent transfers under 11 USC § 547(b) and 548(a).  The Debtor has not fully investigated any the Potential Avoidance Actions.  Upon the Effective Date of the Plan, all Avoidance

23

Actions which have not otherwise been released or settled in accordance with the terms of the Plan may be pursued by the Reorganized Debtor.

4.64 **Professional Fees.** All services performed or expenses incurred by any professional on behalf of the Debtor or the Reorganized Debtor with respect to this Chapter 11 case after the Effective Date shall be Administrative Claims and shall not be subject to the prior review and approval of the Bankruptcy Court. Notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, FRBP 2016, for services rendered after the Effective Date, no professional shall be required to disclose payments from the Debtor or the Reorganized Debtor to the Bankruptcy Court or the United States Trustee. All fees and expenses of the Debtor and the Reorganized Debtor arising from the Effective Date shall be billed directly to the Reorganized Debtor, and the Bankruptcy Court shall only review that portion to which the Reorganized Debtor objects. The Reorganized Debtor shall pay the portion not objected to in accordance with the terms of the invoice.

4.75 **Change of Address.** In order to ensure proper distribution, each Creditor holding a Claim treated under Article II or III must advise the Reorganized Debtor of any change in address. Absent of such notification, the Reorganized Debtor shall send payments to the address listed on the matrix on file with the Bankruptcy Court. If the payment is not negotiated within three (3) months after it is mailed, it shall be void, and the Reorganized Debtor shall have no further obligation to such Creditor.

4.6 **Preservation of Rights of Action.** Debtor may have claims against one or more of the MCA Creditors based on the ongoing investigation by the New York Attorney general of the legality of the collection methods employed by merchant cash

advance companies (the "Preserved Rights").  These potential claims or causes of action are contingent on the outcome of the investigations, which are ongoing.  Except to the extent that any rights of action by Debtor or Reorganized Debtor are specifically released or settled pursuant to the terms and conditions set forth in Article IV of this Plan, or otherwise treated in connection with this Plan, the Confirmation Order, any settlement agreement approved during the Chapter 11 Case in accordance with § 1123(b) of the Bankruptcy Code:

(a) The Preserved Rights shall remain assets of and vest in the Reorganized Debtor, whether or not related litigation is pending on the Effective Date, and whether or not the Preserved Rights have been listed or referred to in this Plan, the schedules, or any other document filed with the Bankruptcy Court;

(b) Neither the Debtor nor the Reorganized Debtor waives, relinquishes, or abandons any Preserved Rights (nor shall it be stopped nor otherwise precluded from asserting the same):

    (i)     Whether or not the Preserved Rights have been listed or referred to in this Plan, the schedules, or any other document filed with the Bankruptcy Court;

    (ii)    Whether or not the Preserved Rights are currently known to the Debtor; and

    (iii)   Whether or not a Defendant or Counter-Defendant in any litigation relating to the Preserved Rights filed a Proof of Claim in the Chapter 11 Case, filed a Notice of Appearance or any other notice or pleading in the

25

Chapter 11 Case, voted to accept or reject this Plan, or received or obtained any consideration under this Plan; and

(c) (i)    The Reorganized Debtor may commence, prosecute, defend against, settle, and realize upon any Preserved Rights in its sole discretion, in accordance with what is in the best interests, and for the benefit of, the Reorganized Debtor;

(ii)   Except as otherwise provided herein, any recoveries realized by the Reorganized Debtor from the assertion of any Preserved Rights will be the sole property of the Reorganized Debtor; and

(iii)  To the extent necessary, the Reorganized Debtor will be deemed the representative of its former Estate under § 1123(b) of the Bankruptcy Code.

## ARTICLE V
## EFFECT OF CONFIRMATION

5.1    **Discharge of Indebtedness.**    Except as provided in this Plan, the occurrence of the Effective Date of this Plan shall, and does hereby, act to discharge and release the Claims of all Creditors of all Interests against the Debtor and the Reorganized Debtor and shall be deemed to constitute a full and complete settlement with such Creditors and/or Interest Holders.

**5.2.    Retention of Liens.** Confirmation of this Plan shall not disturb the perfected liens of any class of secured creditors.  With respect to any Creditor holding a Secured Claim, such Creditor shall retain its lien(s) securing such Claim until such time that its Secured Claim is satisfied. Upon Confirmation, the purported liens held by any

26

Creditor that is wholly unsecured pursuant to 11 U.S.C. § 506 shall be discharged and released in accordance with Section 12.2 of the Plan.

## ARTICLE VI
## MODIFICATION OF THE PLAN

6.1     **Amendments to the Plan:**     The Debtor may, from time to time, propose amendments or modifications of this Plan prior to its confirmation, without leave of this Court, and such proposals shall be deemed to be part of the Plan.   After confirmation, the Debtor may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the effected Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Confirmation Order, or otherwise modify the Plan.

## ARTICLE VII
## JURISDICTION OF THE COURT

7.1     This court shall retain jurisdiction in this matter until the Plan has been fully consummated, including, but not limited to, the following purposes:

A.      The classification of the claim of any Creditor and the re-examination of Claims which have been allowed for the purposes of voting, and the determination of such objections as may be filed to the Claims of Creditors.  The failure by any Debtor or Reorganized Debtor to object to or to examine, any Claim for the purposes of voting shall not be deemed a waiver of any right to object to, or to examine, the Claim in whole or in part.  Furthermore, the fact that this Plan has provided treatment for the

27

benefit of a particular Creditor shall not in any way be deemed a waiver of any right to object to or re-examine any Claim or any Secured Interest, whether by mortgage or otherwise which secures Claim in whole or in part.

B.     The determination of all questions and disputes regarding title to the assets of the Estate, and all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between any Debtor, Reorganized Debtor, or any other party.

C.     The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan, or the Confirmation Order, if necessary, to carry out the purposes and intent of this Plan.

D.     The modification of this Plan after confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code and as provided in Article VI of the Plan.

E.     The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in aid of confirmation of this Plan, including the restructuring transactions.

F.     The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor, the Reorganized Debtor, or any party-in-interest, and to impose such limitations, restrictions, terms, and conditions of such title, rights and powers as this Court may deem necessary to accomplish its obligations under the Plan.

G.     The review and approval of all Professional Fee Applications for services rendered prior to the Confirmation Date, and the review of any Professional Fees for services rendered in connection with the Plan after

28

the Confirmation Date, to the extent that any Debtor or the Reorganized Debtor dispute any portion thereof.

H.    The assumption or rejection of executory contracts under Article X of this Plan.

I.    The right to pursue any of the Avoidance Actions.

J.    The entry of an order determining the validity of any Lien.

K.    The entry of an order concluding and terminating this Chapter 11 Case.


## ARTICLE VIII
## TITLE TO PROPERTY

8.1    Title to all property of the Debtor, including Avoidance Actions, shall vest in the Reorganized Debtor upon the Effective Date of the Plan.  The Debtor shall be discharged from its status as Debtor, and the affairs and business of the Reorganized Debtor shall be thereafter conducted without Court involvement, except as may be governed by Articles IV and VII of the Plan.


## ARTICLE IX
## UNITED STATES TRUSTEE FEES

9.1    **U.S. Trustee Fees.**  The Reorganized Debtor shall pay to the United States Trustee the appropriate sum required by 28 USC § 1930(a)(6), and shall provide the relevant information, including Monthly Operating Reports, as required by the Office of

the United States Trustee ~~until the Effective Date.~~ until the case is converted, dismissed or closed.

## ARTICLE X
## EXECUTORY CONTRACTS

10.1 **ASSUMPTION OF EXECUTORY CONTRACTS.** On or before the Effective Date, the Reorganized Debtor shall file a list of contracts that shall be assumed (the "Notice"). All executory contracts not identified in the Notice or for which a motion to assume has not been filed prior to the Effective Date shall be deemed rejected.

10.2 **REJECTION CLAIMS.** Any Creditor who has a Claim as a result of such rejection shall have thirty (30) days after receipt of the Notice to file a Proof of Claim, failing which such Claim shall be disallowed in its entirety. The Notice shall contain a provision informing any potential Creditor of this requirement and shall be served on such potential Creditor(s)

10.3 **OBJECTIONS TO REJECTION CLAIMS.** The Reorganized Debtor may file an objection to any Proof of Claim filed in accordance with this Article and in accordance with Article XI.

## ARTICLE XI
## OBJECTION TO CLAIMS

30

11.1     **TIMING OF OBJECTIONS.**     The Debtor or Reorganized Debtor may object to the allowance of any Claim, or the extent, validity, and enforcement of any security interest, whether listed on the schedules filed by Debtor or filed by any Creditor, on or before the later of (a) sixty (60) days from the date of filing of any Proof of claim, or (b) six (6) months after the Effective Date.

11.2     **EXTENT OF OBJECTIONS.**     As part of the objection process set forth in Article 11.1 above, and without limiting same, the Debtor or Reorganized Debtor shall have the right to object to the claim of any Lien based upon Section 506 of the Bankruptcy Code or for any other reason as shall be allowed by applicable law.

### ARTICLE XII
### MISCELLANEOUS PROVISIONS

12.1     **DISPUTED PAYMENTS.**     Notwithstanding anything in this Plan to the contrary, neither the Debtor nor Reorganized Debtor shall be obligated to make any payments toward the disputed portion of any Contested Claim.

12.2     **RELEASE OF LIENS.**     The Debtor, Reorganized Debtor, and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan.  This shall include without limitation any execution by the Debtor or Reorganized Debtor of UCC financing statements and the execution by Creditors of any UCC or mortgage discharges, releases, or terminations.

12.3    **SETOFFS AND COUNTERCLAIMS.**    No Creditor (including without limitation a Person or entity that becomes a Creditor as a result of a rejection of a contract) shall be allowed to setoff a Claim against an obligation to the Debtor or Reorganized Debtor arising in connection with a different contract.  Unless expressly asserted in the Chapter 11 Case through the filing of a Proof of Claim, all setoffs and counterclaims are waived pursuant to Article V of this Plan.  The terms of this Article shall not apply to any taxing authority.

12.4    **COMPROMISE OF LITIGATION.**    The Reorganized Debtor shall have the right to commence, continue, amend or compromise all causes of action (including without limitation any Avoidance Action and any action in the Debtor's Disclosure Statement) available to the Debtor, the Estate, the Debtor-in-Possession, or the Reorganized Debtor, whether or not those causes of action were the subject of a lawsuit as of the Confirmation Date.

12.5    **SUCCESSORS AND ASSIGNS.**    This Plan and the Confirmation Order shall inure to the benefit of, and be binding upon, all parties-in-interest and their respective successors and assigns.

12.6 **NOTICE.**  All future notices required under this Plan or Confirmation Order in this case shall be mailed to the Reorganized Debtor at:

> 26862 Woodward Avenue, Suite 103
> Royal Oak, MI 48067

32

## DEBTOR'S DISCLOSURE STATEMENT

## I.  INTRODUCTION AND OVERVIEW

### A.      Purpose of Disclosure Statement

Unless otherwise defined, all capitalized terms shall have the meaning ascribed to them in the Debtor's Plan of Reorganization (the "Plan") unless the context indicates a different meaning.

This disclosure statement is submitted pursuant to Section 1125 of the Bankruptcy Code.  The Debtor has filed the Plan with the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, a copy of which accompanies this Disclosure Statement.

The purpose of this Disclosure Statement is to disclose information deemed by it to be material and necessary for Creditors to make a reasonably informed decision in exercising their right to vote for the acceptance of the Plan.

### B.      Source of Information

The Disclosure Statement and the Plan have been prepared from information furnished by the Debtor.  An independent investigation has not been conducted to verify such information.

The statements contained in this Disclosure Statement are made as of the date filed.  Delivery of this Disclosure Statement shall not create an implication that there has been no change of the facts set forth within this Statement since the date of this Disclosure Statement.

**NO PERSON OR ENTITY HAS BEEN AUTHORIZED BY THE DEBTOR OR THE COURT TO MAKE ANY REPRESENTATIONS CONCERNING THE DEBTOR**

OR ITS FINANCIAL AFFAIRS, OTHER THAN AS SET FORTH IN THIS
DISCLOSURE STATEMENT.

C.      **Chapter 11 Overview**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy
Code. Under Chapter 11, a debtor is authorized to reorganize its business for the
benefit of itself, its creditors, and equity interest holders. In addition to permitting a
rehabilitation of a debtor, another goal of Chapter 11 is to promote equality of treatment
for similarly situated creditors and similarly situated equity interest holders with
respect to the distribution of a debtor's assets.

The commencement of a Chapter 11 case creates an estate that is comprised of all
of the legal and equitable interests of a debtor as of the filing date. The Bankruptcy
Code provides that a debtor may continue to operate its business and remain in
possession of its property as a debtor-in-possession.

The consummation of a plan of reorganization is the principal objective in a
Chapter 11 reorganization case. A plan of reorganization sets forth the means for
satisfying claims against and interests in a debtor. Confirmation of a plan of
reorganization by the Bankruptcy Court makes the plan binding upon a debtor, any
issuer of securities under the plan, any person acquiring property under the plan, and
any creditor or equity interest holder of a debtor. Subject to certain limited exceptions,
the confirmation order discharges a debtor from any debt that arose prior to the date of
confirmation of the plan and substitutes the obligations specified under the confirmed
plan.

After a plan of reorganization has been filed, the holders of claims against or
interests in a debtor are permitted to vote to accept or reject the plan. Before soliciting
acceptances of the proposed plan, however, Section 1125 of the Bankruptcy Code

34

requires a debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical, reasonable investor to make an informed judgment about the plan.

The Debtor is submitting this Disclosure Statement to Holders of Claims against, and Interests in, the Debtor to satisfy requirements of Section 1125 of the Bankruptcy Code.

## II. DESCRIPTION OF DEBTOR

### A. The Debtor-In-Possession

The filing of the Voluntary Petition under Chapter 11 of the U.S. Bankruptcy Code on the Petition Date commenced this Chapter 11 case. Upon filing the Chapter 11 case, the Debtor became a "Debtor-in-Possession", as that term is understood in the Bankruptcy Code. The Debtor desires to reorganize its operations in the manner set forth in the Plan.

### B. Debtor's Principals and Management

Since the Petition Date, the Debtor's daily operations have been the primary responsibility of Kimberly Hosner. Ms. Hosner has been continuously involved in the business since she started the business in 1999 and has maintained responsibility since that time. Ms Hosner holds the real estate broker's license and currently has 20 salespersons in the business. Ms. Honser has never had a partner in the business. Since its inception, Kimberly Hosner was solely responsible for the day-to-day operations. Kimberly Hosner receives totaling $1,500.00 per week plus fringe benefits; however,

35

her wages have been inconsistent due to the company having been overleveraged as a result of multiple merchant cash advances.

Sales initially began to decline in 2008 and continued through 2013, at which point they began to stabilize albeit at a much lower volume than was had in prior years. Ms. Hosner took out several high interest rate merchant cash advances to try to help stabilize the business; however, the combination of the sales decline coupled with the debt that Ms. Hosner assumed to keep the business afloat, resulted in the Debtor not having sufficient revenue to meet all of its obligations. For several years, the Debtor attempted to pay its obligations using cash from other merchant cash advance providers. Eventually, the high interest loans taken to stay afloat outpaced cash flow and the company defaulted. The Debtor could not keep its creditors and lenders from taking collections actions and, lawsuits were filed which exacerbated the business decline.

Ms. Hosner will receive compensation from the ~~reorganized~~ Reorganized Debtor in the amount of $7,500 per month. Fringe benefits will include health insurance and a vehicle for business use. There shall be no other fringe benefits.

**C. Description of Debtor's Business and Reasons for Chapter 11 Filing**

Hosner Holdings, Inc. was founded in 1999 in Huntington Woods, Michigan. The company has operated continuously since that time and is in the business of representing buyers and sellers in real estate transactions. The business struggled during the recession of 2007 and 2008 but recovered as the real estate market recovered.

36

For several years, Kim Hosner attempted to make all of the payments required by the merchant cash advances while also managing all aspects of her real estate brokerage.  Unfortunately, she was operating the business without understanding the cost of borrowing from merchant cash advance companies whose effective interest rates were up to 250%.  The result was a poorly managed business that continued to struggle.  As soon as the cash advances became unsustainable, agents began leaving the brokerage due to missed commission payments.

Realizing that there was insufficient cash flow to continue operations and service the outstanding debt that accrued, Debtor initially sought loans from family and friends in an effort to remain solvent.  This compounded the financial strain on the business.  The Debtor finally elected to reorganize its operations through Chapter 11 once a confession of judgment was filed by a merchant cash advance lender that seized all of the cash in her bank accounts.  This plan is the result of negotiations with creditors and the current operating financial

### III. POST-PETITION EVENTS OF SIGNIFICANCE

**A. Post-Petition Transfers Outside the Ordinary Course of Business**

The Debtor has operated only in the ordinary course of business. Transactions outside of the ordinary course of business require Bankruptcy Court approval.  There have been no post-petition transfers outside of the ordinary course of business unless described in the disclosure statement.

37

**B. Chapter 11 Significant Events and Orders**

  1. **Employment of Professionals**

     a.  On January 22, 2019, the Court entered an Order Authorizing Debtor to Employ its Accountant *(Dkt. #31)* and on March 7, 2019 the order authorizing Debtor to employ it's Attorney was entered by the Court (*Dkt. #39*).

  2. **Financing.**  The Court has not entered any orders authorizing Debtor to use cash collateral or granting adequate protection in this case.

  3. **Operations:**  As part of Debtor's reorganization efforts, several new real estate agents have been recruited to work at the Debtor's brokerage.  Additionally, Debtor is now entering a season in which real estate sales are increasing and are expected to continue to increase through the Fall of 2019.   There have been no orders entered by the Court regarding Debtor's operations.

  4. **Stay of Litigation**

     Debtor's Chapter 11 filings immediately gave rise to the automatic stay provision of the Bankruptcy Code.  This enjoined collection efforts, litigation against the Debtor, and enforcement of Liens against the Debtor's property.  The automatic stay remain in effect, unless modified by the Bankruptcy Court, until consummation of the Plan.

**C. Litigation Involving the Debtor**

As of the Petition Date, Debtor was involved in one pending lawsuit~~s as of~~ in which Debtor was a named Party.  A second lawsuit was filed after the petition, which named the Debtor as a defendant.  Both lawsuits were

38

filed by former agents of Debtor claiming that commissions were owed after they were fired by Debtor. Additionally, while there was no litigation, Debtor was subject to the entry of a confession of judgment filed by one of the MCA creditors, which gave rise to this Chapter 11 case. Any pending litigation would have been stayed pursuant to § 362 of the Bankruptcy Code. Aside from those matters disclosed here, Debtor has not been involved in any litigation in any U.S. Court since the Petition Date.

## IV. <u>ASSETS AND LIABILITIES</u>

**A. <u>Liquidation Analysis</u>**

The Debtor's Liquidation analysis is attached as **EXHIBIT A**. In the event that the Plan is not accepted by the Creditors or is not otherwise confirmed by the Bankruptcy Court, the analysis represents the value of its assets if liquidated under Chapter 7 of the Bankruptcy Code.

**B. <u>Risks, Conditions and Assumptions in Liquidation Analysis</u>**

The Debtor liquidation values were based on information provided to the Debtor regarding the depreciation value of the tangible assets of debtor, which consist primarily of used office furnishings. This value was combined with the average ReMax franchise cost to give Debtor's franchise license a value and determine the overall liquidation value of its assets. The risks, conditions, and assumptions are those assumed and based on the information received from Debtor's accountant and from ReMax of Southeast Michigan.

**C. <u>Causes of Action</u>**

The Debtor reserves its right to collect any other amounts due to it for any reason. The Debtor reserves all setoff and recoupment rights of all kinds and the right to commence Avoidance Actions. The Debtor may have potential causes of action and reserves its right to bring a lawsuit against any entity listed on its schedules as owing a debt to the Debtor of any kind or any entity listed in the Statement of Financial Affairs as having received a transfer from the Debtor. More specifically, and without waiving any other claim, the Debtors may seek to avoid from any direct or indirect transferee, (i) under § 547 of the Code, any transfer of an interest of the Debtor in property, including all payments to vendors and suppliers that occurred within 90 days of the Petition Date, or, with respect to Insiders of the Debtor, within one year of the Petition Date; (ii) under § 544(a) and 545, any liens asserted against the Debtor, (iii) under §§ 544(b) and 548, any actual or constructive fraudulent transfers or obligations, and (iv) under § 549, any unauthorized post-petition transactions.

At this time, the Debtor has not investigated all potential causes of action or Avoidance Actions and is not able to make any representation with respect to their value.

**D. <u>Claims</u>**

The claims against Debtor are those that have been set forth in the Plan that is filed in combination with this Disclosure Statement. Such claims have been treated in the Plan and are based upon the Proofs of Claims filed by the respective creditor. For those creditors who have not filed claims, the claim has been estimated. In no way shall the treatment of any Claim in the Plan indicate Debtor's acceptance of the filed Claim as

40

Allowed. To the best of Debtor's knowledge, all claims have been listed in Debtor's Schedules and treated in the Plan.

## V. IMPLEMENTATION OF PLAN

**A. Financial Information**

1. **Pre-Petition Financial Summaries.** The Debtor has attached financial summaries relating to the two fiscal years prior to the Petition Date (2017 and 2018) as **EXHIBIT B.** These documents summarize the Debtor's financial history prior to the commencement of the Debtor's bankruptcy proceeding.

2. **Post-Petition Financial Summaries.** The Debtor has attached financial summaries relating to the Debtor's financial performance during this Chapter 11 proceeding. **EXHIBIT C**. These documents summarize the financial conditions pertaining to the Debtor's post-petition operations. The source of these summaries are the Debtor's books and Records.

3. **Post-Confirmation Projections.** The Debtor has attached as **EXHIBIT C** the summary of post-confirmation financial projections that are based on pre- and post-Petition Date performance. The projections have been calculated using discounted cash flow assumptions to arrive at estimates for future financial performance.

**B. Tax Ramifications.** The Debtor does not believe that the forgiveness of indebtedness that may result from a discharge granted by confirmation of the Plan will result in significant tax consequences for the Debtor. Forgiveness of indebtedness under the Internal Revenue Code may be applied to the net operating loss carry forward or to the Debtor's asset basis. Before any such

41

determination can be made, all Claims deemed filed in the Chapter 11 case must be reviewed for accuracy. Furthermore, if the Debtor's projections are met or exceeded in the current fiscal year, the Debtor may choose to apply forgiveness of debt directly to its basis. It is unlikely that the amount of forgiveness of debt will be wholly offset by either application. As such, future taxes may be impacted as a result of confirmation of the plan.

The impact of confirmation of the Plan and a discharge may have an effect on Creditors or Holders of Claims and the Debtor recommends that a Creditor or holder of a Claim obtain independent tax counsel to advise them with respect to the tax consequences of the Plan.

## VI. LEGAL REQUIREMENTS

VI. **Legal Requirements**

### A. Voting procedures

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interests that are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are <u>not</u> entitled to vote on the plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the plan will be counted only with respect to claims: (a) that are listed on the Debtors Schedules of Assets and Liabilities <u>other</u> than as disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. 502 and Bankruptcy Rule 3018.

Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan and disclosure statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the plan, and then return the ballot by mail to the Debtors' attorney by the deadline previously established by the Court.

Any ballot that does not appropriately indicate acceptance or rejection of the plan will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the Debtors' attorney.

### B. Acceptance

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.

43

### C. Confirmation

11 U.S.C. § 1129(a) establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a plan under 11 U.S.C. § 1129(a) are these:

1. Each class of impaired creditors and interests must accept the plan, as described in paragraph VI.B., above.

2. <u>Either</u> each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

### D. Modification

The Debtor reserves the right to modify or withdraw the plan at any time before confirmation.

### E. Effect of confirmation

If the plan is confirmed by the Court:

1. Its terms are binding on the Debtor~~s~~, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the plan.

2. Except as provided in the plan and in 11 U.S.C. § 1141(d)~~(5)~~:

<u>(a)</u> In the case of ~~an individual~~<u>a corporation</u> as in this case:

(1) ~~Claims will be discharged, except as provided in 11 U.S.C. § 523 and 1141(d).~~ <u>All claims and interests will be discharged.</u>

(2) ~~Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. §§523 and 1141(d)(3).~~<u>Creditors and shareholders will be</u>

44

prohibited from asserting their claims against or interests in the debtor or its assets.

45

Dated: March 12, 2019

/s/ Kimberly Hosner
Kimberly Hosner
26862 Woodward Ave., Suite 103
Royal Oak, MI 48067

Prepared By:
MAXWELL DUNN, PLC

/s/Ethan D. Dunn
Ethan D. Dunn (P69665)
Attorneys for the Debtor
24725 W. 12 Mile, Ste. 306
Southfield, MI 48034
(248) 246-1166
edunn@maxwelldunnlaw.com

46

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

IN RE:

Hosner Holdings, Inc.

     Debtor.

_____/

Chapter 11
Case #18-55404
Hon. Thomas J. Tucker

**<u>EXHIBIT LIST</u>**

EXHIBIT A       Liquidation Analysis

EXHIBIT B       Pre-Petition Financials

EXHIBIT C       Post-Petition Financials &Post-

             Confirmation Financials

47